**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                               **CRIMINAL NO. 2:20-cr-23-TBM-MTP**

**TAWASKI COLEMAN**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO SUPPRESS**

Tawaski Coleman is a convicted felon who was indicted for possession of a firearm after law enforcement obtained and executed a search warrant for his residence.  The basis for the warrant was a statement from a confidential informant that the Defendant fired shots through his front door at an intruder.  The primary question in this case is: can the undisputed reliability of a confidential informant—alone—save a search warrant under these circumstances?  The Defendant says no, because the warrant is silent on the informant's basis of knowledge and therefore "bare bones."  The Government says yes, because the confidential informant has been historically reliable. In fact, the Government claims that reliability can even validate a warrant based on uncorroborated gossip.  Although the reliability of a confidential informant can salvage some scant search warrants, the totality of the circumstances does not save the search warrant in this case.

After obtaining the search warrant for the Defendant's residence, officers elected to tail him before executing the warrant.  When the Defendant failed to use a turn signal, officers pulled him over.  During the stop, officers smelled an odor of marijuana emitting from the car, and Defendant admitted to having just smoked marijuana.  A passenger in the vehicle also informed

officers that he had a firearm in the backseat.  Significantly, officers told the Defendant that they had a search warrant for his residence.  Defendant responded to this information by admitting that guns would be found in the house.

The law mandates suppression of the evidence related to the search warrant as fruit of the poisonous tree.  This includes Defendant's statement that law enforcement would find guns at his residence.  As the traffic stop was undisputedly lawful, however, the evidence obtained prior to the discussion of the search warrant is not excluded.

## I. BACKGROUND

On July 27, 2017, a Forrest County Justice Court Judge, based on an affidavit sworn to by Metro Narcotics Agent Joe Kennedy, signed a warrant authorizing agents to search Tawaski Coleman's residence for handguns. [24-1].  The affidavit refers to information received from a reliable confidential informant. [24-1].  According to the informant, Coleman was in possession of guns at his residence.  The informant "stated that someone tried to rob Coleman several weeks ago," and that Coleman "fired several shots through the front door at them." [24-1].  There are no details as to how the informant obtained this information or whether the informant had any personal knowledge of the described events.  The affidavit is also silent as to whether agents conducted an investigation or attempted to corroborate the informant's claims.

In fact, at a hearing on Defendant's Motion to Suppress, the Government conceded that no investigation was ever made into the informant's tip and that no additional information was provided to the judge at the time the warrant was presented.  Coleman has submitted a copy of a computer aided dispatch (CAD) report describing a call made by a female at Coleman's residence on July 11, 2017. [35].  According to the CAD report, and contrary to part of the informant's tip,

the female caller—as opposed to Coleman— fired shots at someone who had attempted to "break into her house."

On July 28, 2017, prior to executing the search warrant, agents began surveillance of Coleman. It was during this surveillance that agents conducted a traffic stop based on Coleman's failure to use a turn signal, in violation of Section 63-3-707 of the Mississippi Code. [24] at 2. Agents detected the smell of marijuana, and Coleman admitted to having just smoked marijuana. *Id*. Also, a passenger informed the agents that there was a gun in the back seat. [1] *Id*. At this point, agents informed Coleman about the search warrant for his residence. *Id*. In response, Coleman stated that there was nothing at his residence other than firearms and a bag of marijuana. *Id*. During the search of his residence, agents found a Glock .45 caliber pistol with a high-capacity magazine, a Taurus 9mm handgun, an AK-47 rifle, and four bags of marijuana. [24-1] at 4.

On June 23, 2020, Coleman was federally indicted for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). [3]. Coleman now argues that the evidence obtained pursuant to the warrant and any statements made in connection with the warrant should be suppressed as "fruit of an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution." [24] at 1, 7.

## II. THE PARTIES' ARGUMENTS

Coleman alleges that the affidavit underlying the warrant constitutes a "bare bones" affidavit "lacking sufficient facts and circumstances from which an issuing judge might independently determine probable cause." [24] at 3. The fill-in-the blank warrant largely consists of boilerplate language with little additional information. [24-1] at 1. The only filled-in sections

---

[1] The Government is in "substantial agreement with the facts as relayed in the Statement of Facts and the Exhibit to the Defendant's Motion [to Suppress]." [30] at 2.

include (1) the Defendant's given name and his street name ("RED"), (2) the Defendant's

address, and (3) a description of specific items to be found as "several handguns." *Id.*

The "Underlying Facts and Circumstances" statement attached to the affidavit provides

as follows:

> On July 27, 2017, I Agent Kennedy of Metro narcotics, along with Special Agent
> (SA) Mark Mitchell received information from a creditable [sic] and reliable DEA
> Confidential Source that a black male known as Tawaski Coleman, AKA "RED"
> possessed multiple firearms at his residence aforementioned. Coleman is a known
> active gang member of the National Street Gang, "Vice Lords". Coleman has a
> prior felony conviction. Due to the recent spike in gang related violence in the
> Hattiesburg, Mississippi area. [sic] The CS contacted SA Mitchell and Agent
> Kennedy and advised them that Coleman was in possession of a firearm at the above
> mentioned address. The CS also stated that someone tried to rob Coleman several
> weeks ago and Coleman observed them on his home surveillance system and fired
> several shots through the front door at them. The CS has been a confidential source
> since 2003. The CS has provided information in the past that has led to numerous
> felony arrest[s] and the seizure of large quantities of narcotics. The CS has also
> provided past information that led to the apprehension of several fugitives.

[24-1] at 3.

Coleman's objections to the affidavit focus on the lack of detail. He argues that the affidavit

fails to address the confidential informant's basis of knowledge, and that the information may arise

from many levels of hearsay. Coleman further asserts that the agents did not independently

corroborate the informant's statements. [24] at 3.

The Government acknowledged, at the hearing on the motion to suppress, that the

informant's factual basis could have come from rumors on social media or twenty levels of hearsay.

But the Government submits that the affidavit contains enough information from a reliable

informant to determine probable cause. [30] at 8.

## III. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further requires that all warrants be supported by probable cause. *See* U.S. Const. amend. IV. "Evidence collected in violation of that requirement is typically subject to the exclusionary rule and may be suppressed to deter future law enforcement misconduct." *United States v. Bell,* 832 F. App'x 298, 300–01 (5th Cir. 2020) (citing *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir. 2019).[2] Application of the exclusionary rule is not automatic, however. When law enforcement officers seize evidence through objectively reasonable reliance on a search warrant, the Fourth Amendment does not require that courts suppress the evidence. *United States v. Huerra*, 884 F.3d 511, 515 (5th Cir. 2018) (citing *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). This principle is the good-faith exception to the exclusionary rule. *Huerra*, 884 F.3d at 515.

In considering a motion to suppress, the Court engages in a two-part inquiry: (1) whether the good-faith exception to the exclusionary rule applies and (2) whether the warrant was supported by probable cause. *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993) (citing *Leon*, 468 U.S. 897). "Principles of judicial restraint and precedent dictate that, in most cases, [the court] should not reach the probable cause issue if a decision on the admissibility of the evidence

---

[2] In considering the "original public meaning" of the Fourth Amendment, the history suggests that the remedy for a violation was a suit for trespass. *United States v. Beaudion*, 979 F.3d 1092, 1094-96 (5th Cir. 2020); *California v. Acevedo*, 500 U.S. 565, 581, 111 S. Ct. 1982, 1992, 114 L. Ed. 2d 619 (1991) (Scalia, J. concurring) ("An officer who searched or seized without a warrant did so at his own risk; he would be liable for trespass, including exemplary damages, unless the jury found that his action was 'reasonable.'") (citing Akhil Reed Amar, *The Bill of Rights as a Constitution*, 100 Yale L.J. 1131, 1178-1180 (1991). "In the 20th century, however, the exclusionary rule—the rule that often requires trial courts to exclude unlawfully seized evidence in a criminal trial—became the principal judicial remedy to deter Fourth Amendment violations." *Utah v. Strieff*, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016).

under the good-faith exception of *Leon* will resolve the matter." *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988).

### 1.   Whether the Good-faith Exception to the Exclusionary Rule Applies

The good-faith exception provides that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the warrant was unsupported by probable cause." *Laury*, 985 F.2d at 1311 (citing *Leon*, 468 U.S. at 922-23). However, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922-23.  For example, "an officer may not obtain a warrant based on a bare bones affidavit 'and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.'" *United States v. Barrington*, 806 F.2d 529, 532 (5th Cir. 1986) (quoting *Leon*, 468 U.S. at 922 n.24).

"Bare bones" affidavits "contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d, 317, 321 (5th Cir. 1992).  For example, affidavits "that merely state that the affiant 'has cause to suspect and does believe' or 'has received reliable information from a credible person and does believe' that contraband is located on the premises" are bare bones. *Huerra*, 884 F.3d at 515 (quoting *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006)).  "An affidavit is 'bare bones' if it is so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable." *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997).  The Court makes the "bare bones" determination by evaluating the totality of the circumstances. *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)).

### a.  The Use of Confidential Informants to Establish Probable Cause

Information supplied by confidential informants can establish probable cause.  *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause," and the mere statement that the affiant "received reliable information from a credible person" is inadequate to provide such a basis.  *United States v. Brown*, 567 F. App'x 272, 282 (5th Cir. 2014) (quoting *Gates*, 462 U.S. at 239).  An affidavit may rely on hearsay as long as the affidavit presents a "substantial basis for crediting the hearsay."  *Laury*, 985 F.2d at 1312 (citing *Gates*, 462 U.S. at 242).  "To assess the value of a confidential informant's report, we consider his veracity, reliability, and basis of knowledge."  *Mack v. City of Abilene*, 461 F.3d 547, 551 (5th Cir. 2006) (quoting *Gates*, 462 U.S. at 230).

### (1) Informant's Veracity and Reliability

An informant's reliability can be established by an affidavit that states that "the informant has previously given tips that have proved to be correct."  *United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987) (citing *United States v. Phillips*, 727 F.2d 392, 396 (5th Cir. 1984)).  The affidavit at issue states that the informant has provided information since 2003 that has led to the apprehension of several fugitives, numerous arrests, and the seizure of large quantities of narcotics.  Coleman does not dispute the veracity or reliability of the informant.

### (2) Informant's Basis of Knowledge

An informant's basis of knowledge can be established by first-hand knowledge, the detail of the information given, or police investigation or corroboration.  *See United States v. Fields*, 72 F.3d 1200, 1214 (5th Cir. 1996) (finding affidavit was not bare bones where the informant's

information was corroborated by police investigation and it included detailed information provided by informant such as names, addresses, amounts of money).  "An informant's basis of knowledge can . . . be established by a particularly detailed tip."  *Laury*, 985 F.2d at 1313 (citing *Jackson*, 818 F.2d at 349).

Here, the contested portions of the search warrant include a fill-in-the blank affidavit with certain fields completed and an attached "Underlying Facts and Circumstances" statement.  [24-1].  The completed fields provide the following minimal information: Coleman's given name and "street" name ("RED"), address, and a description of the items to be found as "several handguns." [24-1] at 2.  The informant told agents that Coleman was in possession of firearms at his residence *Id*.  The informant also told them that Coleman had recently attempted to shoot an intruder at his residence. [24-1] at 3.  The affidavit is silent as to the informant's basis of knowledge for these statements.  Therefore, it is unclear whether the information was obtained through the informant's personal observations, street rumors, or some other unknown source.

A canvas of case law demonstrates that affidavits are bare bones when they contain as little information as this one. In *United States v. Barrington*, the Fifth Circuit held an affidavit which "stated only that Captain Solomon 'received information from a confidential informant' who is 'known to Captain Phil Solomon and has provided information in the past that has led to arrest and convictions'" was a bare bones affidavit.  *United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986).  The officer "had no good faith reason to believe the magistrate had made a probable cause determination" where the officer "obtained the warrant based on his own bare bones affidavit and then conducted the search himself." *Barrington*, 806 F.2d at 532 (citing *Leon*, 468 U.S. at 922 n.24); *see United States v. Brown*, 567 F. App'x 272, 281-83 (5th Cir. 2014) (finding that officers

"could not have acted in objectively-reasonable good-faith reliance upon the search warrant" where the one-page affidavit failed to include details of the investigation or specific facts as to the credibility of the informant).[3]

Further, there must be some indication that the informant's information is not merely the product of "rumor or innuendo." *See United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993) (finding that informant's story was supported by more than rumor or innuendo where officers corroborated informant's statement that he had personally observed drug sales by defendant); *United States v. Pasquarille*, 20 F.3d 682, 689 (6th Cir. 1994) (finding informant's statements were reliable where they were based on the informant's firsthand observations as opposed to idle rumor or irresponsible conjecture); *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002) (finding tip was based on the informant's first-hand observations, "not merely from rumor or innuendo").

###     i.     Informant's Personal Observations

Where the Fifth Circuit has found affidavits satisfied either the probable cause or good faith exception standards, the affidavits often include some indication of personal knowledge, usually through direct observations on the part of the informant. *See United States v. Gallegos*, 239 F. App'x 890 (5th Cir. 2007) (affidavit was not bare bones where confidential informant had personally observed cocaine on the defendant's property in the last forty-eight hours); *United States v. Cutwright*, 247 F. App'x 499 (5th Cir. 2007) (affidavit was not bare bones where confidential

---

[3] *See also United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (finding good-faith exception inapplicable where "[s]ave for a passing reference to [defendant's] car registration, the affidavit [wa]s devoid of facts connecting the residence to the alleged drug dealing activity"); *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) ("[E]ven assuming the reliability" of the informant, the pre-printed affidavit was comprised of boilerplate text that was bare bones where it lacked particularized facts and there was no effort to substantiate informant's claims through independent investigation); *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) (finding good-faith exception inapplicable where there was not "*some* factual basis connecting the place to be searched to the defendant or suspected criminal activity").

informant had personally observed cocaine and the sale of cocaine at the defendant's residence); *United States v. Laury*, 985 F.2d 1293 (5th Cir. 1993) (probable cause existed in part because confidential informant had provided a detailed tip from an eyewitness to the robbery); *United States v. Satterwhite*, 980 F.2d 317 (5th Cir. 1992) (probable cause existed where confidential informant personally observed the events described); and *United States v. McKnight*, 953 F.2d 898 (5th Cir. 1992) (affidavit was not bare bones where confidential informant personally observed methamphetamine inside the defendant's residence in the last seventy-two hours).

Likewise, the cases cited by the Government are distinguishable.  Each of these cases establish some basis of knowledge by personal observation in addition to the informant's reliability. *See United States v. Rodriguez*, 8 F.3d 23 (5th Cir. 1993) (unpublished) (affidavit was not bare bones where veracity and basis of knowledge were established in the affidavit);[4] *United States v. Lindsay*, 6-16-cr-143, 2016 WL 4544546 (W.D. Tex. Aug. 30, 2016) (affidavit was not bare bones where confidential informant personally observed cocaine on the defendant's property in the last forty-eight hours by participating in a controlled sale); *United States v. Gallegos*, 239 F. App'x 890 (5th Cir. 2007) (affidavit was not bare bones where confidential informant personally observed cocaine on the defendant's property in the last forty-eight hours); and *United States v. May*, 819 F.2d 531, 536 (5th Cir. 1987) (affidavit was not bare bones because "statements by law enforcement officials based upon personal observation or upon the observation of fellow officers participating in the same investigation are entitled to a presumption of reliability").

---

[4] To review the language of the affidavit at issue in this unpublished opinion, the Court read the Appellant's brief. *United States v. Rodriguez,*1993 WL 13100347, at *2 (June 18, 1993).  The affidavit clearly states that the informant "did within the last twenty-four hours see a controlled substance" at the defendant's premises.

### ii.       Corroboration or Investigation of Informant's Statements

In evaluating the veracity and basis of knowledge of the informant, courts also consider whether police corroborated the informant's statements or conducted an independent investigation.  *See United States v. Cisneros*, 112 F.3d 1272, 1279 (5th Cir. 1997) (holding affidavit was not bare bones where confidential source was involved in defendant's drug operations and information provided by source had been corroborated by other sources); *United States v. Shugart*, 117 F.3d 838, 844 (5th Cir. 1997) (stating the confidential informant's knowledge was strengthened by the DEA's independent investigation which corroborated important aspects of the information provided by the informant); *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130–31 (5th Cir. 1997) (finding that "taken together, the information provided by [the informant] and the contemporary corroborative evidence gathered by the government" which included aerial surveillance and personal observations of investigators "were sufficient for a reasonable officer to believe that the challenged warrant was based on probable cause"); *United States v. Bell*, 832 F. App'x 298, 301–02 (5th Cir. 2020) (finding affidavit was not "bare bones" where it included details of three undercover drug sales between defendant and officers and direct observation by officers of defendant driving from residence to a drug sale); *United States v. Kleinebreil*, 966 F.2d 945, 949 (5th Cir. 1992) (finding good-faith exception applied where the eight-page affidavit "relates at length the surveillance activities" involving the defendant).

At the hearing, the Government conceded that there was no effort to investigate or corroborate the informant's tip.  Had agents attempted to corroborate the informant's statement, they would have learned that information in the "tip" may be incorrect, as the described incident involved a female as opposed to Coleman.

### iii.    "Particularly Detailed" Tip by Informant

An informant's basis of knowledge can also be established by a "particularly detailed tip."

*Jackson*, 818 F.2d at 349.  In *United States v. Laury*, the affidavit included the following:

A confidential source who has provided reliable information in the past to local law enforcement officers and whose information has culminated in three arrests and three convictions furnished the following information to which he had access:

1.   A personal friend of Felmon Lakeith Laury stated that Laury robbed a bank in Rosebud, Texas during December, 1988.

2.   Felmon Lakeith Laury is unemployed and has been for some time.  However, in late December, 1988, Laury purchased a 1982, two-door, white Lincoln Continental with a tan "convertible look" vinyl top.  He also purchased a yellow Chevrolet Z.28 Camaro for his girlfriend.  Around Christmas, 1988, Laury went to Houston with another black male and purchased expensive clothes, and had a $1,500 stereo installed in his car.  Laury also gave some of his friends $100 each as a Christmas gift.

3.   Felmon Lakeith Laury is currently using an alias of Walter Ray Nicholson.

4.   Felmon Lakeith Laury was raised in the Calvert, Texas area near Rosebud, Texas and frequently travels to that area.

5.   Felmon Lakeith Laury currently lives with his girlfriend DeShanon "Dinky" Cooper at the Estell Village Apartments, 5938 Highland Village Drive, Apartment # D, Dallas, Texas.  Laury has lived there since December, 1988.

*Laury*, 985 F.2d at 1312.  That particular affidavit sufficiently demonstrated the informant's basis of knowledge.  *Id.* at 1312-13.  The informant even "knew with specificity expenditures that Laury made in December 1988."  *Id.*  This "particularly detailed" tip, coupled with the agent's corroboration of the girlfriend's address and the fact that the informant had provided reliable information in the past, "provided the magistrate with a substantial basis for crediting the CI's statements."  *Id.*

In *United States v. Lopez*, the Fifth Circuit considered an affidavit that:

> Provided a detailed description of the cellar, gave the location and name of the business, stated the cellar had been used for the past ten months, and described the means used to hide the entrance. The affidavit also provided approximate dates for a marijuana shipment and information that the owner of Lopez Truck Parts and Service attempted to negotiate a deal with Lopez-Falon. The affidavit further indicated employees had been directed to clean the cellar, bag the seeds, and bury the bag.

*United States v. Lopez*, No. 93-CR-99-1, 1995 WL 581675 (5th Cir. Sept. 1, 1995). The court found that the informant's "detailed facts" were sufficient for the magistrate judge to conclude that the information had been obtained "in a reliable manner." *Lopez*, 1995 WL 581675 at *3 (quoting *Laury*, 985 F.2d at 1313). After considering the "totality of the circumstances," which included a particularly detailed tip and corroboration by investigating officers, the court found that "the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

Contrary to the Government's position, the affidavit at issue does not include a "particularly detailed tip." [30]. Rather, the "tip" includes a conclusory statement that the defendant was in possession of firearms at his residence, and that the defendant had discharged a firearm "several weeks ago" against an intruder. [24-1] at 3. Not only did the tip lack sufficient details to ensure it was not based on gossip or internet chatter, a cursory investigation would have revealed information in the tip was potentially incorrect. Therefore, the tip is not "particularly detailed."

### (3) Informant's tips based on hearsay

The Government recognizes that the informant's tip could have come from countless levels of hearsay. While an affidavit may rely on hearsay, the affidavit must present a "substantial basis for crediting the hearsay." *Laury*, 985 F.2d at 1312 (citing *Gates*, 462 U.S. at 242). For

example, the *Laury* case involved double hearsay as some of the informant's statements were based on information given to the informant by an unidentified personal friend. *Id.* at 1313. The court stated that while it is true that "the affidavit failed to establish the personal friend's veracity and basis of knowledge, we are not precluded from determining that a substantial basis existed for crediting the personal friend's statement." *Laury*, 985 F.2d at 1313 (citing *Gates*, 462 U.S. at 232). The court pointed to the fact that the personal friend correctly identified the time and place of the robbery. *Id.* Moreover, the personal friend's statements were corroborated by the informant's statements. *Id.*

While an affidavit can be based on hearsay, and even double hearsay, the Government contends that an affidavit can be based on a *rumor* beneath twenty layers of hearsay. At the suppression hearing, the Government argued that numerous layers of hearsay can be overcome by a showing as to the reliability of the informant. While the reliability of a confidential informant can compensate for deficiencies, the totality of the circumstances must be considered. There is no "substantial basis for crediting the hearsay" in this case. Unlike the double hearsay in *Laury*, there is no indication of how many layers of hearsay exist here. The informant's past reliability, which is undisputed, is not enough to overcome the affidavit's lack of factual basis for the one-sentence statement supporting why Coleman was in possession of firearms. The totality of the circumstances demonstrates that the affidavit is bare bones.

### b. Good-faith Reliance

Not only does the affidavit fail to establish the informant's basis of knowledge, but there was no "good-faith reliance" by the officers on the issuance of the warrant by a judge. *Leon*, 468 U.S. at 922-23. While *Leon* recognized the good faith exception to the Fourth Amendment

exclusionary rule, the Court insisted that "the officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable." *Id.*  The Supreme Court indicated that an officer may not obtain a warrant based on a bare bones affidavit and "then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Id.*  In *Barrington*, the officer who obtained the warrant based on his own bare bones affidavit conducted the actual search. *Barrington*, 806 F.2d at 531.  The court noted that "if one cannot use a bare bones affidavit and then rely on an ignorant colleague to conduct the search, he cannot himself conduct the search based on his own bare bones affidavit." *Id.* at 532.  Similarly, in this case, the same officer who prepared the warrant and presented it to the justice court judge also executed the search.  Like the officer in *Barrington*, there was no good-faith reliance by Agent Kennedy where he executed a search warrant that was based on his own bare bones affidavit.

The affidavit is "bare bones."  After considering the "totality of the circumstances," the court finds that Agent Kennedy could not have acted in objectively reasonable good-faith reliance upon the search warrant because the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.

For these reasons, the good-faith exception does not apply, and the Court proceeds to the second step of the test to consider whether probable cause existed for the warrant.

**2.  Whether Probable Cause Existed in Support of the Search Warrant**

The Court must now determine whether there was a substantial basis for the probable cause determination by the issuing judge.  The Court concludes there was not.

"While the good faith analysis focuses on what an objectively reasonable police officer would have known to be permissible, this second step focuses on the magistrate's decision."

*United States v. Morton*, 984 F.3d 421, 430 (5th Cir. 2021). "The magistrate is permitted to draw reasonable inferences from the material he receives, and his determination of probable cause is entitled to 'great deference' by the reviewing court in all 'doubtful or marginal cases.'" *Morton*, 984 F.3d at 430 (quoting *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987)). In *Gates*, the Supreme Court held that whether there was probable cause to support issuance of a warrant should be judged by the "totality of the circumstances," paying great deference to the issuing magistrate's determination of probable cause. *Gates*, 462 U.S. at 238. Probable cause exists when, under the "totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (quoting *Gates,* 462 U.S. at 238).

Probable cause "means something more than mere suspicion." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quoting *United States v. Gordon*, 580 F.2d 827, 832–33 (5th Cir. 1978)). "Probable cause requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it." *Froman,* 355 F.3d at 889 (quoting *Gordon*, 580 F.2d at 832-33) (internal quotation marks omitted). "A magistrate needs only a substantial basis for concluding that a search would uncover wrongdoing." *Brown*, 567 F. App'x at 283 (quoting *United States v. Allen*, 625 F.3d 830, 840 (5th Cir. 2010)). "Although we accord great deference to a magistrate's determination of probable cause, we will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *Kohler v. Englade,* 470 F.3d 1104, 1109 (5th Cir. 2006) (quoting *Leon,* 468 U.S. at 914–15) (internal quotation marks omitted).

The use of informants plays a legitimate role in criminal investigations.  *United States v. Brown*, 941 F.2d 1300, 1303 (5th Cir. 1991) (citing *Gates*, 462 U.S. at 237).  In *Gates*, the Supreme Court explicitly rejected the two-prong test pronounced in *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), which required the magistrate to separately evaluate both the informant's basis of knowledge and the informant's veracity or reliability.  *Brown*, 941 F.2d at 1303 (citing *Gates*, 462 U.S. at 230-31).  "Rather than adopt a rigid rule regarding the use of informants, the Supreme Court opted for a 'totality of the circumstances' approach to a magistrate's finding of probable cause."  *Id.* at 1303-04 (citing *Gates*, 462 U.S. at 230).  While the government no longer has to establish these two elements independently, "an informant's basis of knowledge, veracity and reliability are 'closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is probable cause to believe that contraband or evidence is located in particular place.'"  *Id.* at 1303 (citing *Gates*, 462 U.S. at 230).

 In determining whether an informant's report is credible, the informant's veracity and basis of knowledge are examined as they are relevant considerations under the "totality of the circumstances" test for valuing an informant's report.  *Laury*, 985 F.2d at 1312 (quoting *Gates*, 462 U.S. at 230-33).  "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."  *Id.*

In *United States v. Brown*, the Fifth Circuit found that the affidavit failed to disclose details of an investigation or any specific facts that would "allow the magistrate to conclude that there was a fair probability that drugs would be found in Brown's residence."  *Brown*, 567 F. App'x at 283-84.  The court held that the affidavit failed to provide information about an investigation into the defendant's trafficking activities or the nexus between those activities and the defendant's

residence.  *Id.* at 284.  As such, it was insufficient to allow the magistrate to determine whether probable cause existed.  *Id.*; *see also United States v. Morton*, 984 F.3d 421, 430 (5th Cir. 2021) (holding no probable cause to search images on defendant's cell phone for evidence of "other drug crimes" where affidavit included statements that defendant possessed less than two ounces of marijuana and that the officer believed criminals took photographs of co-conspirators).

Here, the affidavit did not provide the justice court judge with the "substantial basis" needed to conclude that there was probable cause to justify the search.  On the one hand, the affiant attested that the confidential source had provided reliable information since 2003 which resulted in numerous felony arrests and the apprehension of several fugitives. [24-1] at 3.  However, the affiant did not provide any facts demonstrating the informant's basis of knowledge.  The affidavit includes the informant's statement that Coleman discharged a firearm on the property against an intruder "several weeks ago." [24-1] at 3.  But the affiant does not state how the informant obtained this information, whether by personal observations or from an eyewitness.  Furthermore, the Government concedes that the information could be from rumors, gossip, or numerous levels of hearsay.

The affidavit failed to provide specific facts as to the basis of knowledge of the confidential informant and lacked any indication of investigation or corroboration of the confidential informant's statements.  Considered in the totality, the affidavit was insufficient to allow the justice court judge to find probable cause to search Coleman's residence.

Since the Court finds that the good faith exception does not apply and there was no probable cause to search Coleman's residence, all statements and evidence obtained in connection with that search must be suppressed.

### 3. Whether the statements at the traffic stop are admissible

In addition to the evidence collected at his residence, Coleman seeks to suppress the statements he made at the traffic stop. [24] at 7. According to the officer, Coleman admitted to having just smoked marijuana, and his back-seat passenger informed officers that he had a gun in the backseat. When officers informed Coleman about the warrant for his residence, "Coleman is alleged to have responded that he had nothing at his residence except firearms and a small bag of marijuana." [24] at 7.[5] The Court has already held that neither the good faith exception applies nor was there probable cause to search Coleman's residence. At issue here is the admissibility of Coleman's statement about items at his residence, his admission to having just smoked marijuana, and his passenger's statement that he had a gun in the backseat.

### a. Coleman's statement that he had just smoked marijuana and his passenger's statement that there was a gun in the backseat of the vehicle

The Court will first address Coleman's admission to having just smoked marijuana and his passenger's statement that there was a gun in the backseat of the vehicle. Coleman's failure to use a traffic signal provided a legitimate basis for the traffic stop.[6] *See Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). "As a general matter, the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. Further, "a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has 'probable cause to believe that a traffic

---

[5] At the direction of the Court, the parties filed supplemental briefing [37], [38] and [39] on the issue of whether Coleman's statements should be excluded as "fruit of the poisonous tree."
[6] Coleman withdrew the argument in his supplemental briefing that the traffic stop, itself, was unreasonable under the Fourth Amendment. [40].

violation has occurred.'" *United States v. Escalante*, 239 F.3d 678 (5th Cir. 2001) (quoting *Whren*, 517 U.S. at 810).

After the officer smelled marijuana coming out of the vehicle, Coleman admitted to having recently smoked marijuana. This observation and admission gave officers probable cause to search the vehicle. *See United States v. Ogden*, 572 F.2d 501, 502 (5th Cir. 1978) (stating that law enforcement's "identification of the odor of marijuana is enough to support probable cause to search" and "[n]o warrant is required for the search of an automobile under such circumstances"). The Court finds that Coleman's statement that he had just smoked marijuana and his passenger's statement that there was a gun in the backseat are both admissible, as officers had a legitimate basis for the traffic stop and probable cause to search the vehicle.

### b.   Coleman's statement that there were guns and marijuana at his residence

The Court will now consider the admissibility of the statement that Coleman made *after* officers informed him of the search warrant for his residence. Since neither the good-faith exception applies nor was there probable cause to search Coleman's residence, agents did not possess a valid search warrant.

The "fruit of the poisonous tree" doctrine applies to "physical, tangible materials" as well as "verbal evidence" gathered from an illegal search or seizure. *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012) (citing *United States v. Ceccolini*, 435 U.S. 268, 277, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978)). Under the fruit of the poisonous tree doctrine, "all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of a Fourth Amendment violation." *United States v. Martinez*, 486 F.3d

855, 864 (5th Cir. 2007) (citing *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998)); *see United States v. Mendez*, 885 F.3d 899 (5th Cir. 2018) (citing *Utah v. Strieff*, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016)) ("[T]he exclusionary rule reaches not only the evidence uncovered as a direct violation, but also evidence indirectly derived from it— so called 'fruit of the poisonous tree.'").

"The exclusionary rule is subject to three safety-valve doctrines: independent source, inevitable discovery, and attenuation." *Mendez*, 885 F.3d at 909 (citing *Strieff*, 136 S. Ct. at 2061) (citations omitted). The "independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Strieff*, 136 S. Ct. at 2061. The "inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Id.* (citing *Nix v. Williams*, 467 U.S. 431, 443–44, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984)). Finally, the attenuation doctrine provides that "[e]vidence is admissible when the connection between the unconstitutional conduct and evidence is remote or has been interrupted by some intervening circumstance, so that the 'interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Id.* (quoting *Hudson v. Michigan*, 547 U.S. 586, 593, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006)).

In this case, the Government's supplemental briefing mentions the "independent source doctrine" by name, but does not analyze the legal requirements for the exception. [38] at 11. Nor does it apply the legal requirements to the admission of evidence pertaining to the invalid search warrant. Instead, it argues:

> In his motion, the Defendant incorrectly asserts that the independent source doctrine does not apply because "both the search of the residence and the traffic stop were part of a single concerted effort by police." This argument ignores *Whren* and the fact that there was an independent basis, supported by reasonable suspicion,

for pulling over the vehicle (i.e. traffic infraction).  The reasonable suspicion underlying the traffic stop was entirely independent of the probable cause associated with the traffic stop and the subsequent odor of marijuana detected by law enforcement upon approach gave probable cause to then remove the occupants from the vehicle and to search the vehicle.  The evidence that was uncovered by law enforcement following the traffic stop is therefore properly obtained.

[38] at 11.  As the Court has already held, Coleman's statement that he had just smoked marijuana and his passenger's statement that there was a gun in the backseat are admissible, as officers had a legitimate basis for the traffic stop.  However, that same analysis does not apply to Coleman's statement which was made in response to being informed that officers had a warrant.  The Government neither argues nor provides any legal support that Coleman's statement about guns at his residence is subject to the "independent source doctrine."  Nor does the Government contend that the evidence at issue would have been discovered under the "inevitable discovery doctrine."[7]  The Court will now address the "attenuation doctrine."

"When deciding whether testimony is admissible, the Supreme Court considers the degree of free will exercised by the defendant or third party and balances the cost of 'exclusion [that] would perpetually disable a witness from testifying about the relevant and material facts' against the need to deter unconstitutional conduct in the future." *Hernandez*, 670 F. 3d at 620 (5th Cir. 2012) (quoting *Ceccolini*, 435 U.S. at 277).  "Evidence may be sufficiently attenuated from the Fourth Amendment violation even where the violation is a but-for cause of the discovery of the evidence." *Mendez*, 885 F.3d at 909 (citing *Hudson*, 547 U.S. at 592).  "The key question is whether the evidence 'has been come by exploitation of that illegality or instead by means sufficiently

---

[7] "The inevitable discovery doctrine applies if the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008).

distinguishable to be purged of the primary taint.'" *Mendez*, 885 F.3d at 909 (quoting *Brown v. Illinois*, 422 U.S. 590, 599, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975)).   In determining whether evidence is sufficiently attenuated from a Fourth Amendment violation, the following factors should be considered: "(1) the provision of *Miranda* warnings; (2) the temporal proximity between the unlawful arrest [or search] and the challenged statements; (3) intervening circumstances; and (4) the purpose and flagrancy of the official misconduct." *Mendez*, 885 F.3d at 909 (citing *Brown*, 422 U.S. at 603-04).

   In applying the *Brown* factors, the Government acknowledges that there is no indication that *Miranda* warnings were given. In terms of temporal proximity, Coleman admitted to possessing guns in his home immediately after being told about the search warrant. The next factor to consider is the existence and importance of any intervening circumstances. "Intervening events of significance include, for example, an appearance before a magistrate or consultation with an attorney." *Hernandez*, 670 F.3d at 622 (finding defendant's doorstop admission cannot form basis of probable cause to arrest where inculpatory statement occurred "without any intervening event of significance"). The Government has not shown that there was a "break in the chain of events sufficient to refute the inference" that Coleman's admission was a product of a Fourth Amendment violation.[8]   Nor has the Government provided any case law in support of its position that the "discovery of the odor of marijuana attenuated whatever taint may have existed." Finally, as for the "purpose and flagrancy of the official misconduct," this Court has found that officers

---

[8] The Government implies that Coleman's statement was voluntary. [38] at 12.  However, the Supreme Court has "firmly established that the fact that the confession may be 'voluntary' for purposes of the Fifth Amendment . . . is not by itself sufficient to purge the taint of the illegal arrest." *Taylor v. Alabama*, 457 U.S. 687, 690, 102 S. Ct. 2664, 73 L. Ed. 2d 314 (1982). *See also United States v. Hill*, 649 F.3d 258, 269 (4th Cir. 2011) ("[t]his Court and the Supreme Court have consistently held that an analysis of the voluntariness of a statement is a separate inquiry from determining whether the taint from a Fourth Amendment violation has dissipated.").

did not possess a valid search warrant as neither the good-faith exception applies nor was there probable cause to search Coleman's residence. The officer obtained and executed a warrant based on his own "bare bones" affidavit. The *Brown* factors weigh in favor of exclusion.

Coleman's statement that he possessed guns at his residence was in direct response to being informed that agents possessed a search warrant for his residence. Therefore, this statement is excluded as fruit of the poisonous tree. *See United States v. Maberry*, 193 F. Supp. 3d 724, 733 (S.D. Miss. 2016) (suppressing defendant's statements connected to illegal search because "[i]t seems speculative to believe that [defendant] would have volunteered his ownership of contraband in the vehicle had the search not been imminent"); *United States v. Lester*, 616 F. Supp. 2d 590, 592, n.2 (W.D. Va. 2009) (recognizing that the government did not contest that defendant's statement should be excluded as fruit of the poisonous tree if the search warrant was determined invalid where the defendant admitted to possession of illegal substances after learning of the search warrant).

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress Evidence [24] is GRANTED in part and DENIED in part.

**SO ORDERED** on this, the 18th day of May, 2021.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE